JULIUS GIANAKOS, Plaintiff-Appellant, v. THE CITY OF PEORIA, Defendant-Appellee.

Third District   No. 3—83—0389

Opinion filed November 30, 1984.—Rehearing denied May 24, 1985.

Julian E. Cannell, of Kavanagh, Scully, Sudow, White & Frederick, P.C., of Peoria, for appellant.

Brian M. Nemenoff, Corporation Counsel, of Peoria, for appellee.

JUSTICE BARRY delivered the opinion of the court:

The plaintiff, Julius Gianakos, is owner of certain real property in Peoria. The defendant, the city of Peoria, rezoned an area including the plaintiff's property. The plaintiff challenged the rezoning in court. The trial court upheld the zoning ordinance and this appeal followed.

The property at issue is addressed as 104 Roanoke and 108 Roa-

noke. An old duplex currently stands on 104, while a 16-unit apartment complex built in 1977-78 stands on 108. The lots are adjoining. When the plaintiff acquired the property, it was zoned R-3, high density residential. On June 1, 1982, the city adopted a zoning reclassification ordinance for property in Peoria's West Bluff area, an area known as the Randolph/Roanoke neighborhood. The ordinance affected 32 properties, including that at issue. It reclassified the plaintiff's property as R-2, medium density residential.

Under the ordinance, the plaintiff's apartment complex at 108 Roanoke is a lawful, nonconforming use. Under the city's permanent zoning code the complex's nonconforming use may continue indefinitely until either it is abandoned for more than one year or it is substantially destroyed. Under the ordinance, the plaintiff's duplex at 104 Roanoke is a permitted use. However, the plaintiff claims he intended to build at 104 an eight-unit addition to the 108 Roanoke apartment building. Such an addition apparently would have been allowed under the R-3 classification, but is not allowed under R-2 zoning.

In reaction to the zoning ordinance, the plaintiff filed a two-count complaint. Only count I is relevant to this appeal. In count I the plaintiff alleged that the ordinance was invalid in that it was arbitrary, discriminatory, confiscatory and failed to bear any reasonable relationship to the public good. The plaintiff prayed, *inter alia*, for a declaratory judgment that the ordinance was unconstitutional and void, and that he was entitled to use the subject property for reasonable purposes allowed by an R-3 zoning classification.

At the trial, the plaintiff presented evidence that the enforcement of the ordinance decreased the market value of his apartment complex at 108 Roanoke and made impossible his intended development of the 104 Roanoke property. The plaintiff also presented evidence that there was a property with a 12-unit apartment building near the plaintiff's property and within the Randolph/Roanoke neighborhood which was zoned R-3 and not included in the zoning rollback.

The trial court received other evidence, including written development plans for Peoria's West Bluff and the downtown redevelopment areas. According to the plans, the West Bluff area is principally residential. It also includes Bradley University and some commercial property. The downtown redevelopment area includes Peoria's principal commercial district plus some institutional and some residential properties. The two area maps overlap so that each contains the subject property. The subject property is in a residential area on the fringe of downtown Peoria.

The trial court also received the testimony of Wayne Anthony, Peoria's director of planning and zoning. Mr. Anthony, who supervised a study of the West Bluff area, testified at the trial that the plaintiff's property was properly treated under the West Bluff plan rather than the downtown redevelopment plan. Anthony testified that the Randolph/Roanoke area had been rezoned in correspondence with the West Bluff area plan. That plan was developed following a determination that it was desirable to limit the increase of density in the area. According to Anthony, the plan provides that there will be no R-3 zoning in the West Bluff area.

In support of the zoning change, Anthony stated that as it affected property which is not yet developed to the maximum allowed under R-3 zoning, such as the plaintiff's duplex, the change to R-2 benefited the public by limiting future problems with levels of traffic, off-street parking, and deterioration and disinvestment in the neighborhood. Further, Mr. Anthony's statements suggested that he considered there was also a public benefit in having the zoning change include property already developed to a density greater than R-2, such as the plaintiff's apartment complex. According to Mr. Anthony's statements, the change of zoning for the latter category of property benefited the public by providing more uniform zoning for the area. Mr. Anthony suggested that uniformity in zoning is desirable from the public's perspective, since any zoning variations can encourage other property owners to seek variations and can make more likely additional alterations in the zoning. Variations may, then, frustrate the efforts and lessen the public benefit of the land use planning.

The trial court found that the zoning ordinance was not arbitrary, discriminatory or confiscatory but that it bore a reasonable relationship to the public's health, safety, morals, and general welfare. The court entered judgment for the defendant, and the plaintiff appealed. On appeal, the plaintiff argues that the factors to be considered in determining the validity of the ordinance weigh substantially in his favor. He argues that there is no public benefit requiring a change in the original zoning ordinance.

A zoning ordinance is presumed valid. One challenging the ordinance bears the burden of establishing by clear and convincing evidence that the ordinance, as applied, is arbitrary and unreasonable and bears no substantial relation to the public health, safety or welfare. (*Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 354 N.E.2d 899.) Factors which a court may consider in determining validity of a zoning ordinance include: (1) the existing uses and zoning of nearby property; (2) the extent to which property values are dimin-

ished by the zoning restrictions; (3) the extent to which the ordinance promotes the public's health, safety, morals or general welfare; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner; and (5) the suitability of the property for the zoning. (*Harris Trust & Savings Bank v. Duggan* (1983), 95 Ill. 2d 516, 449 N.E.2d 69.) In reviewing the judgment in a zoning case, we will not disturb the trial court's findings unless they are against the manifest weight of the evidence. *Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, 377 N.E.2d 21.

We can understand the plaintiff's displeasure with the zoning change, particularly given the circumstance that a neighboring apartment complex was not part of the instant rezoning. Furthermore, the record shows that the plaintiff may suffer hardship under the ordinance. However, there is also evidence that it was proper for the plaintiff's property to be zoned with reference to the West Bluff plan and that there was a public benefit in the zoning change. The trial court found that the ordinance was valid. We do not find that the trial court's findings were against the manifest weight of the evidence.

Accordingly, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

STOUDER, P.J., and HEIPLE, J., concur.